UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:10-CV-00154-R

**KARST ENVIRONMENTAL EDUCATION
AND PROTECTION, INC.**                                                     **PLAINTIFF**

v.

**FEDERAL HIGHWAY ADMINISTRATION, et al.**                    **DEFENDANTS**

**MEMORANDUM OPINION**

This matter is before the Court upon Movants' motion to intervene as defendants (DN 7). Plaintiff and Defendants have both responded in opposition (DN 14; DN 17). Movants have replied (DN 18; DN 19). This motion is now ripe of adjudication. For the reasons that follow, Movants' motion is DENIED.

Movants have also filed a motion for leave to file a brief as amicus curiae (DN 24). For the reasons that follow, this motion is GRANTED. Movants may participate in the instant action as amicus curiae and are permitted to file memoranda to support or oppose any dispositive motions.

**FACTUAL BACKGROUND**

This action has its origins in the commercial and industrial growth that has characterized Bowling Green, Kentucky ("City"), for the past several decades. A recent study by the federal government found that the City and the county in which it sits, Warren County ("County"), serve as the main economic center for southwestern Kentucky, and that both are increasing rapidly in population. DN 17-2 at 11. This growth has served to create a prosperous, economically-vibrant region of the state; it has also strained the existing infrastructure of surrounding area, in particular the locality's roads and highways.

1

To the northeast of the City are located, U.S. interstate I-65 ("I-65") and U.S. Highway 31-West ("U.S. 31"). The two highways project out from the City like the spokes of a wheel. I-65 heads due east while U.S. 31 takes a more northeasterly route. The corridor created by the divergence of the two thoroughfares has grown substantially in the last thirty years ("the Corridor"). It is heavily populated, with several industrial parks, an assortment of commercial businesses, a number of apartment complexes, mobile home parks, and single family residences. Growth in and around the Corridor has caused increased traffic on the surrounding roads. This in turn has led to a spike in motor-vehicle accidents that is "higher than those for other similar Kentucky highway segments." DN 17-2 at 1-15.

One of these industrial parks in the Corridor is the Kentucky Transpark ("Transpark"), an industrial economic zone developed by the Inter-Modal Transportation Authority, Inc. ("ITA"). ITA is a nonprofit agency formed by the City and County to purchase land for and to develop the Transpark. It purchased the 800 acres the Transpark now occupies through a $25 million industrial revenue bond issuance. In 2007, the City and County assumed equal responsibility for the bonds if ITA fails to comply with its interest-payment schedule.

To alleviate the increased congestion and to create a safer network of roads, the Kentucky Transportation Cabinet ("KYTC") and the Federal Highway Administration ("FHWA") began planning a connector road that would extend from north to south, linking the two spokes of the Corridor, I-65 and U.S. 31 ("Project"). In 2003, FHWA published notices of the plan and stated its intent to analyze the Project under the National Environmental Policy Act of 1969 ("NEPA").[1] A number of meetings were held with state and government agencies that

---

[1] In *Friends of Tims Ford v. Tenn. Valley Auth.*, 585 F.3d 955, 968 (6th Cir. 2009), the Sixth Circuit provides the following brief description of NEPA:

2

included the City, the County, the United States Park Service, the Kentucky Departments of Agriculture and Fish and Wildlife Resources, and others. The groups discussed the environmental impact of the Project and its alternatives at length, after which the FHWA and KYTC released the Final Environmental Impact Statement ("FEIS"). The FEIS described eight different options for the Project, and then detailed the labors of FHWA and KYTC in deciding on which option to pursue. Eventually, the FHWA decided upon Alternative 6-Orange, as laid out in the FEIS, for the Project. Alternative 6-Orange calls for a four-lane divided highway between I-65 and U.S. 31, with anticipated costs of more than $70 million. As designed, the Project will intersect the Transpark twice and the primary interchange with U.S. 31 will sit only 9/10s of a mile away from the Transpark's entrance. *Id*. at 19, 66-69. Although the City, County, and ITA did participate in these meetings before the FEIS's publication, they were not involved in the ultimate decision arrived upon by FHWA and KYTC.

## PROCEDURAL BACKGROUND

Karst Environmental Education and Protection, Inc. ("KEEP") is a nonprofit Kentucky Corporation that describes its mission "to educate and advocate towards the goal of protecting, conserving, and defending karst, karst systems, and karst landscapes." DN 11 at 6. Karst topography is "usually characterized by barren, rocky ground, caves, sinkholes, underground rivers, and . . . results from the excavating effects of underground water on massive soluble

---

> NEPA is a procedural statute, designed to ensure that federal agencies consider the environmental impact of their actions. To satisfy this goal, NEPA provides that when a federal agency undertakes major federal action significantly affecting the quality of the human environment, it must prepare an [Environmental Impact Statement] concerning that action.

*Id*. at 968. (internal citations and quotation marks omitted).

limestone." Encyclopedia Britannica Online, www.britannica.com (last visited February 14, 2011) (defining "karst"). According to KEEP's complaint, the area around the City is one of the more elaborate examples of karst topography in the country, the keystone being the cave system of Mammoth Cave National Park, which stretches some 400 miles in all directions.

On October 5, 2010, KEEP brought this action against the FHWA, the administrator of the FHWA, and Kentucky's division administrator of the FHWA in his official capacity (collectively "Defendants"). KEEP's Complaint asks for a declaratory judgment finding that the FHWA violated NEPA when it failed to make a number of factual and scientific findings before deciding to proceed with the Project.[2] KEEP also seeks injunctive relief to stop the Project from progressing.

On December 12, 2010, the City, the County, and ITA (collectively "Movants") filed their joint Motion to Intervene in the action as defendants under Federal Rule of Civil Procedure 24. In it, the Movants declare that they have number of important financial and public interests implicated by this litigation, that are not being adequately represented, and therefore they are entitled to intervention of right under Rule 24(a)(2). Alternatively, Movants state that the Court should grant permissive intervention as described in Rule 24(b), as only they will be "able to provide a uniquely local perspective" to the litigation. DN 7-1 at 12. On either count however, the Movants are in firm support of the Project and would work to see it constructed in its current form should the Court to allow them to intervene. KEEP and Defendants both urge the Court to deny the Movants' request in large part because Movants do not have a legal interest recognized

---

[2] Although NEPA does not include a private right of action, legal action is permitted through the Administrative Procedure Act ("APA"). *Friends of Tims Ford*, 585 F.3d at 968. However, as this motion confronts only the jurisprudence of Rule 24, an in depth analysis of NEPA and the APA is unnecessary.

in the context of Rule 24 at stake in this litigation. KEEP and Defendants suggest that the more appropriate role for Movants in this action is that of amicus curiae.

## STANDARD

Federal Rule of Civil Procedure 24 allows for two types of intervention: intervention of right and permissive intervention. Subsection (a)(2) of the rule provides that a non-party may intervene as "of right" when, "[o]n timely motion," the movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). In other words, Rule 24 allows an absentee party to petition for intervention when it "stands to have its interests harmed." *Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 670 n. 13 (6th Cir. 2004). The Sixth Circuit has held that Rule 24 "should be 'broadly construed in favor of potential intervenors.'" *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007) (quoting *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991)).

On the other hand, Rule 24(b) describes that a party is permitted to intervene when, on a timely motion, the party "is given a conditional right to intervene by a federal statute" or "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). In choosing to grant or deny permissive intervention, not only is the trial court bestowed with broad discretion, *Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974), but it must also seek to guard against any "undue[] delay or prejudice [to] the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(3).

Finally, in addressing the factual allegations of the parties, this court will accept "as true the non-conclusory allegations made in support of an intervention motion." *Sw. Ctr. for*

5

*Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001); *see Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995).

## ANALYSIS

### I. Intervention of Right

For the Movants to successfully intervene in this action under Rule 24(a)(2),[3] they:

> must establish four factors before being entitled to intervene: (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect their interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenor's interest.

*Granholm*, 501 F.3d at 779 (citing *Grutter v. Bollinger*, 188 F.3d 394, 397-98 (6th Cir. 1999)). Each of the factors must be shown, as the absence of even one will compel the Court to deny Movants' request. *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005) (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)).

In addressing the four requisite factors for intervention under Rule 24(a)(2), the parties focus the bulk of their attention on whether the Movants have a sufficient legal interest in the subject matter of the litigation. ITA offers three separate interests implicated in the instant action. First, simply by virtue of its ownership of the Transpark and when considering the proximity of the Project to its investment, ITA says it has an interest in this litigation. It also claims a protected interest in "providing safe and adequate transportation" in the area around the Transpark. DN 7-1 at 6, 9. ITA further asserts that its obligation to pay off the $25 million bond issuance is directly related to the Project's completion and is therefore a strong legal interest in

---

[3] Rule 24(a)(1) does provide intervention of right where it is founded on a federal statute. Fed. R. Civ. P. 24(a)(1). However, for this matter, no such statute exists; therefore this section of the rule is not explored.

the outcome of this litigation. The City and County's interests in this litigation track those of ITA. They state that they "have an interest in providing for the safety and convenience of their citizens and those who travel the public roads in the area of the [Project]" *Id*. at 7. Each also argues it has an interest in the satisfaction of the bond issuance, as both are accountable for half of the financial obligation. Finally, the City and County declare that the Project will provide a much needed stimulus to the local economy and ultimately increase their tax base by improving property values. They argue that this economic impact is an "interest sufficient to entitle them to intervene in a lawsuit by environmentalists against the government seeking enforcement of federal regulatory requirements." *Id*. at 9. KEEP and Defendants respond that these interests are not sufficiently implicated in this litigation to grant the Movants intervention.

In examining the requisite interest for Rule 24(a)(2), this circuit has "opted for a rather expansive notion" of the factor. *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997) (citations omitted). In describing its own jurisprudence on the subject, the Sixth Circuit has "noted that an intervenor need not have the same standing necessary to initiate a lawsuit" and "cited with approval decisions of other courts 'reject[ing] the notion that Rule 24(a)(2) requires a specific legal or equitable interest.'" *Id*. (citations omitted). It has also instructed lower courts to construe the term "liberally." *Bradley v. Milliken*, 828 F.2d 1186, 1193 (6th Cir. 1987). These past rulings do not mean however that "any articulated interest will do." *Granholm*, 501 F.3d at 780 (citations omitted). Rather, would-be intervenors must show "a direct, significant legally protectable interest" as the subject matter of the litigation. *United States v. Detroit Intern. Bridge Co.*, 7 F.3d 497, 501 (6th Cir. 1993).

Exactly what constitutes an "interest" under Rule 24(a)(2) is an ever evolving question in federal jurisprudence. "Courts have enjoyed little success in attempting to define precisely the

7

type of interest necessary for intervention." *Sanguine, Ltd. v. U.S. Dept. of Interior*, 736 F.2d 1416, 1420 (10th Cir. 1984) (citations omitted). Moreover, commentators on the subject have "bemoaned the . . . dearth of guidance" from the Supreme Court on the matter. Daniel R. Mandelker, *Intervention as of Right*, NEPA Law and Litig. § 4:26.2 (July 2010) (listing law review articles). What is a proper interest under Rule 24(a)(2) is only further complicated in actions under NEPA, as plaintiffs in these cases typically bring suit against government agencies seeking to enforce particular statutes against third-parties. Erik Figlio, *Stacking the Deck Against "Purely Economic Interest": Inequity and Intervention in Environmental Litigation*, 35 Ga. L. Rev. 1219, 1231 (2001). Thus, NEPA cases typically impact a variety of individuals who are not parties to the original suit, are nevertheless directly implicated by the action, and who therefore frequently seek to intervene to protect their legal rights. *Id*.

Here, the Court is asked to determine whether the above-described interests are sufficiently significant to merit the Movant's intervention into an action brought under NEPA. The following provides introductory guidance with the type of interest required to intervene:

> A person whose interest in the matter of litigation is not a direct or substantial interest, but is an indirect, inconsequential, remote, conjectural or contingent one, cannot intervene. A person having merely a collateral interest in the subject matter of a proceeding cannot intervene in the proceeding. . . . A person or entity does not have a sufficient interest to qualify for the right to intervene merely because an impending judgment will have some effect on him or her. The judgment to be rendered must affect the proposed intervenor's direct or personal rights, not those of another.

59 AM. JUR. 2d *Parties* § 135 (1987) (footnotes omitted). In describing the rationale for changes to Rule 24 in 1966, the Third Circuit said that the alterations were primarily "to allow intervention by those who might be practically disadvantaged by the disposition of the action." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 970 (3rd Cir. 1998).

Few cases in the footprint of the Sixth Circuit have examined whether a party possessed a sufficient interest under Rule 24(a)(2) to intervene in a NEPA action. In fact, the only pertinent case this Court encountered was *Center for Biological Diversity v. Rural Utilities Service*, decided by Judge Hood in the Eastern District of Kentucky.[4] No. 5:08-292-JMH, 2008 WL 4186891, at *1 (E.D. Ky. Sept. 10, 2008). In it, the plaintiffs brought action under NEPA against the Rural Utility Service ("RUS"), a federal agency under the umbrella the United States Department of Agriculture. Plaintiffs stated that RUS had violated its own rules and regulations when it agreed to fund in-part the construction of two gas-fired turbines for a non-profit electric cooperative. *Id*. at *1-2. Judge Hood found that the cooperative had "a substantial legal interests in the case" since it was under a statutory obligation to provide electric power to a portion of Kentucky and the turbine construction was directly related to this obligation. *Id*. at *3.

Appeals courts in other circuits have made analogous findings concerning Rule 24(a)(2) interests, where intervenors possessed defined contractual or real property rights that were subject to change as a result of NEPA litigation. In *Sierra Club v. Espy*, environmental groups initiated a lawsuit against the United States Forest Service under NEPA, and several other federal statutes, to challenge its management of several national forests in Texas. 18 F.3d 1202, 1204 (5th Cir 1994). There, the district court denied a motion to intervene by several timber companies, deciding that they did not have a protectable interest in the litigation despite

---

[4] To be sure, there have been other actions under NEPA in this circuit where litigants have sought to intervene. *See e.g.*, *Friends of Tims Ford*, 585 F.3d at 955; *State of Ohio ex rel. Brown v. Callaway*, 497 F.2d 1235, 1241-42 (6th Cir. 1974); *Anglers of the AU Sable v. U.S. Forest Serv.*, 590 F. Supp. 2d 877, 881 (E.D. Mich. 2008). Yet none of these cases have analyzed the interest requirement under Rule 24(a)(2).

9

possessing contracts that granted the companies rights to harvest timber in the forests. *Id*. at 1204-05. The court of appeals disagreed, deciding that the companies could intervene under Rule 24(a)(2) because each had "legally protectable interests in [their] existing timber contracts." *Id*. at 1207. In *Southwest Center for Biological Diversity v. Berg*, a circuit court also reversed the trial court's decision to deny developers' motion to intervene in a NEPA case where environmental groups initiated an action against the city of San Diego, objecting to its conservation plans. 268 F.3d 810, 814 (9th Cir. 2001). In so deciding, the court discussed the importance of its finding that the developers were third-party beneficiaries in a number of contracts directly implicated by changes made to the plans. *Id*. at 820-21. *Espy* and *Berg*[5] are representative of today's legal current, which typically requires intervenors to show contractual, real property, or specific economic rights at stake in the subject matter of NEPA litigation. *See e.g.*, *WildEarth Guardians v. U.S. Forest Service*, 573 F.3d 992, 995-96 (10th Cir. 2009) (owners of mine possessed protectable, real-property interest under 24(a) in law suit under NEPA where an environmental group challenged the Forest Service's approval of a plan to vent methane gas from mining operation); *Kleissler*, 157 F.3d at 972-73 (local school districts had protectable, economic and statutory interest in litigation where plaintiffs sought to enjoin logging under NEPA and school districts received a portion of money generated from logging pursuant to a state statute); *Greenpeace Found. v. Daley*, 122 F. Supp. 2d 1110, 1114 (D. Haw. 2000) (lobster fishermen had protectable, economic interest under 24(a)(2) in suit under NEPA and the

---

[5] Both *Espy* and *Berg* are cited as favorable precedents for the Movants. The Court fails to see the similarities. Both cases unabashedly concern the intervenors' interests in a case due to their preexisting contract rights. Such concerns are no where to be found in the current litigation. While the Movants raise certain issues with this straightforward interpretation in their replies, the reasoning they offer is unavailing, as it focuses on trivial portions of what are otherwise two unambiguous decisions.

Endangered Species Act against the Department of Commerce where a plaintiff filed for injunctive relief to stop lobster fishing); *see also Cnty. of St. Louis v. Thomas*, 162 F.R.D. 583, 586-87 (D. Minn. 1995) (intervenors possessed a protectable, environmental interest in subject matter of litigation under 24(a)).

In reviewing the interests offered by the Movants, the Court believes that none offers a legitimate basis for intervention. First, though the Movants each claim a protectable interest in the success or failure of the bond issuance, this interest is far too attenuated to satisfy the standard under Rule 24(a)(2). Whether they are able to satisfy their financial obligations will be impacted be a variety of factors ranging from the region's overall economic climate, to the City's and County's tax rates as compared to other similarly situated municipalities. No party can show conclusively that the Project's completion will ensure the financial viability of the Transpark or the timely repayment of the bond issuance. Additionally, the bond issuance is entirely unrelated to the Project; ITA purchased the land with the issuance's funds a number of years before the FHWA ever issued the FEIS with the Project's current design. As such, this Court is incapable of construing such a speculative interest as one that is "direct, significant [and] legally protectable." *Detroit Intern. Bridge Co.*, 7 F.3d at 501.

Second, the City's and County's interests in their tax bases and the region's economic development are equally remote and unpredictable to allow intervention of right. The sum result of the Project will not affect the respective tax revenues; rather the City and County hope that its completion will draw businesses to the Transpark, which will in turn stimulate economic growth, thereby improving their bottom line.[6] Accordingly, the "protectable interest" cited by the City

---

[6] If the City and County could more conclusively establish an adverse impact on their tax revenues, their intervention into this matter may in fact be appropriate. *See Scotts Valley Band*

and County is not directly impacted by the current litigation, but instead contingent on a string of the other occurrences. Other courts have found, and this Court agrees, that an interest "'contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy [Rule 24(a)].'" *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001) (quoting *Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)). The Court is also unpersuaded by the City and County's assertions that the overall economic conditions of the region are an "interest sufficient to entitle them to intervene." DN 7-1 at 9. The Court could not find, nor do the Movants provide, supportive precedent finding that the overall economic outlook of the region is a legal interest upon which a Rule 24(a)(2) motion may be founded. Indeed, to allow the City and County to interject themselves into this action under this rationale would be to fling open the doors to any party who could cite any benefit from the Project, no matter how attenuated the causal chain. Such a result could not have been the intent of the drafters when the rule was crafted.

Next, the City and County claim they have a legally protectable interest "in providing for the safety and convenience of their citizens and those who travel the public roads in the area of the [Project]." DN 7-1 at 7. This argument is without merit. First, as both KEEP and Defendants point out, neither the City nor the County are charged with maintaining I-65 or 31-U.S.; the responsibility falls to the federal and state governments respectively. Consequently, the traffic accidents, protection from which allegedly represents the primary motivation for intervention, are not occurring on byways under the direct supervision of any potential

---

*of Pomo Indians of Sugar Bowl Rancheria v. United States*, 921 F.2d 924, 927-28 (9th Cir. 1990) (removal of land from municipality's jurisdiction would affect tax base and therefore intervention was appropriate). Here however, the nexus between projected tax revenue and the Project's construction is overly tenuous.

intervenor. To the extent that the City and County's interest can be construed as one merely protecting the safety and well being of its residents, courts have consistently held that municipalities are not vested with the power to protect those interests under the theory of *parens patriae*. *See Larwin Mortg. Investors v. Suffolk Cnty.*, Nos. 87-1454, 87-1522, 1988 WL 76537, at *6 (6th Cir. 1988); *United States v. City of Pittsburg*, 661 F.2d 783, 786-87 (9th Cir. 1981). In their reply to this motion, the City and County point to a number of different cases which ostensibly stand for the proposition that municipalities may intervene in law suits challenging federal action. DN 19 at 6. These cases are either distinguishable from or irrelevant to the matter at hand. More importantly, none of the precedent is controlling on this Court's decision, as all the cases arise outside the Sixth Circuit.

Finally, that the Transpark property will be impacted by the Project does not bestow a legally protectable interest upon ITA. In so deciding, the Court first rejects ITA's contention that mere proximity to the Project provides it an interest under Rule 24(a)(2). While ITA has not pointed to a relevant judicial decision where intervention of right was appropriate due solely to an intervenor's proximity to a construction project, the Court has found examples that stand for the exact opposite proposition. *See e.g.*, *Wade v. Goldschmidt,* 673 F.2d 182, 184-86 (7th Cir. 1982) (no right of intervention where proposed bridge was situated near potential municipal-intervenors); *Dodson v. Salvitti*, 77 F.R.D. 674, 676 (E.D. Pa. 1977) (no legally, protecable interest in litigation where potential intervenors sought to join law suit to establish low income housing near intervenors' homes). Accepting for a moment ITA's argument, if mere proximity to the Project was to entitle a party to intervention, what would stop other similarly situated parties from joining the litigation? Would Movants have the Court use only milage from the Project to determine whether an individual has a legally protectable interest or should the Court

13

also consider the largess of property holdings as well? Subscribing to Movants' logic momentarily, it is easy to imagine an arduous scenario where in determining intervention under Rule 24(a)(2), all nearby real property owners would be permitted to intervene to support or oppose this construction. In addition, where other courts have examined whether property owners held a permissible interest for intervention due to nearby construction, the potential intervenors brought their motions in objection to the construction. *See Nextel Comm'ns of Mid-Atlantic, Inc. v. Town of Hanson*, 311 F. Supp. 2d 142, 150 (D. Mass. 2004) (objecting to the construction of a radio tower); *Bachman v. Hecht*, 659 F. Supp. 308, 310 (D.V.I. 1986) (objecting to the construction of a condominium complex). Here, according to the filings before the Court, ITA has no wish to impede the Project or alter it in any way; rather it wants to see it completed as currently designed. ITA has failed to provide, nor has this Court encountered, a case that states a property owner has a legally protectable interest in its general desire for a third party to complete a nearby construction project. Therefore, the Court must reject this argument.

That the Project as currently designed is also slated to intersect the Tranpark is equally ineffective in persuading this Court to allow ITA to intervene. As stated earlier, ITA supports the Project's current design and its expeditious construction. Past actions finding an interest under Rule 24(a)(2) for real property owners have arisen in large part on three distinct grounds: (1) owners or possessors of land seeking to intervene in cases that dispose of land through sale or condemnation,[7] (2) owners attempting to stop or alter a nearby, objectionable construction

---

[7] *See e.g.*, *Fresno Cnty v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (group of current and prospective farmers who had right to purchase land under reclamation laws had interest in litigation seeking to require government agency to enforce certain provisions of same reclamation laws); *In re Lopez-Soto*, 764 F.2d 23, 27 (1st Cir. 1985) (tenant of property had interest in bankruptcy litigation relating to the property); *Oneida Indian Nation of N.Y. v. New York*, 201 F.R.D. 64, 69-71 (N.D.N.Y. 2001) (Native American tribe claiming interest in land

project,[8] and (3) owners opposing a proposed impact on their land.[9] The current action does not fit neatly into any of these categories. In the past, intervenors have held an interest in the litigation to prevent a harmful impact upon their real property that arose from a third-party's construction endeavor; here Movants instead seek to intervene only to support the FHWA in its quest to complete the Project. Was this Court to accept ITA's mere ownership of the Transpark and its desire to see the Project complete a sufficient interest to intervene, then every owner

---

under eighteenth century treaty could intervene in lawsuit where another tribe was seeking to assert its own claims over same land held by the state of New York); *Lennox Indus., Inc. v. Caicedo Yusti*, 172 F.R.D. 617, 621 (D.P.R. 1997) (intervenor-bank had an interest in a foreclosure action where it was holder in due course of secondary note on the property); *Home Sav. of Am., FSB v. Pioneer Bank and Trust Co.*, 169 F.R.D. 332, 335(N.D. Ill. 1996) (co-owner of mortgaged property possessed interest to intervene in foreclosure action involving property's other owners).

[8] *See e.g.*, *Nextel Commc'ns of Mid-Atl., Inc. v. Town of Hanson*, 311 F. Supp. 2d 142, 149-50 (D. Mass. 2004); *Bachman*, 659 F. Supp. at 310 (landowners did not possess legally protectable interest in challenge to condominium construction because properties were not near enough to one another); *United States v. Hooker Chem. & Plastics Corp.*, 101 F.R.D. 444, 447 (W.D.N.Y. 1984) (state of Ontario had a legally protectable interest in litigation where landfill in on its border with New York threatened its residents with potential contamination)

[9] *See e.g.*, *WildEarth Guardians*, 573 F.3d at 995-96 (owners of mine possessed protectable, real-property interest under 24(a) in law suit under NEPA where environmental group challenged the Forest Service's approval of plan to vent methane gas from mining operation); *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 997-98 (8th Cir. 1993) (landowners had interest in litigation where in action to determine if Native American Tribe had hunting rights on land); *Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 828-29 (5th Cir. 1967) (intervenor had interest in case between government and developer to stop construction on coral reef where intervenor also claimed ownership of reef); *United States v. Martin*, 267 F.2d 764, 768-69 (10th Cir. 1959) (intervenor-land owner possessed interest in declaratory action by United States to determine rights of parties affected by water diversion plan where the plan would affect the natural irrigation on his land); *United States v. Schreiber*, 150 F.R.D. 106, 108 (S.D. Ohio 1993) (tenants possessed interest in litigation where HUD accused landlord of not properly maintaining the apartment building); *Town of North Hempstead v. Vill. of North Hills*, 80 F.R.D. 714 (E.D.N.Y. 1978) (Owners of land permitted to intervene where plaintiffs brought action against village to enforce compliance of certain federal regulations that would change local zoning requirements for owners' property).

whose property is touched by the current design would similarly have a right to intervene and voice their approval or dissent. The Court does not believe that Rule 24(a)(2) intended to cast so wide a net. In addition, while ITA may hold an interest in the Transpark property, it cannot be said that it holds an interest in "the subject matter of the case," which is whether the FHWA abided by its rules and regulations in deciding to construct the Project. ITA did not conduct the NEPA analysis and did not perform studies of the region's topography or the environmental impact of the Project. While ITA would like to see the Project constructed in its current form, it had no measurable impact on the decision to proceed with its construction; sole discretion has always rested with the FHWA. Consequently, this Court believes that the process and procedures employed by the FHWA in deciding to build the Project are the "subject matter of the litigation," not the property the Project will intersect. Thus, simple ownership of the Transpark does not translate into a legally protectable interest for ITA.

In their replies, the Movants mention three additional arguments in hope of joining this litigation. They initially point to Section E of KEEP's amended complaint, which lays out the relief requested. In it, KEEP asks the Court to deny funding for the Project to the City and County. In their responses, they declare that this relief is demonstrative of their substantial legal interests, as KEEP "seeks to deprive [the City and County] of benefits FHWA is legally authorized" to distribute to them. DN 19 at 3. This argument is unconvincing. KEEP's claims for relief seek only to forestall the completion of the Project, whether that is through denying direct action by the FHWA or by preventing disbursement of funds to third parties to begin its construction. The City and County do not have a legal or contractual right to this sum of money designated to complete the Project; they simply have an expectancy considering FHWA's past decision to proceed with construction. The Movants further counter that as both landowners and

the representatives of their citizens, the interests they are seeking to protect are "significantly greater" than those of KEEP's members, as the latter are a simply a disparate group of environmentalists. This contention ignores both the Court's prior rulings that the Movants' proffered interests to the litigation are only tangentially related to the current action as well as the statutory reality that KEEP is permitted to bring this law suit according to the unambiguous provisions of the APA and NEPA. *See Friends of Tims Ford*, 585 F.3d at 964. That Movants may have a connection to the litigation does not in turn equate to an interest in it under Rule 24(a)(2).

For the last argument in their replies, Movants point to a recent decision from the Ninth Circuit, *Wilderness Society v. U.S. Forest Service*, No. 09-35200, 2011 WL 117627, at *1 (9th Cir. Jan. 14, 2011). There, the court of appeals repudiated its own "federal defendant rule," which until recently had barred all private parties from intervening as a matter of right in claims brought under NEPA. *Id*. at *2. The rule and its variations have been the subject of much judicial debate, as at least one circuit has chosen to follow the rule, *see e.g.*, *Wade*, 673 F.2d at 186, while several others have specifically rejected it. *See e.g.*, *WildEarth Guardians*, 573 F.3d at 922; *Kleissler*, 157 F.3d at 974; *Espy*, 18 F.3d at 1208. To date, the Sixth Circuit has declined to weigh in on this ongoing circuit split. *See Friends of Tims Ford*, 585 F.3d at 963 n. 1 (declining to decide whether a private party could intervene as a defendant in a NEPA action). Movants now invite this Court to enter the fray by permitting them to intervene under Rule 24(a)(2), as "*Wilderness Society* reflects a sea change[]" in the jurisprudential landscape surrounding the issue. DN 18 at 2. The Court declines to be swept up by Movants' argument. The Movants lack a protectable interest in the subject matter of the litigation and therefore intervention under this provision of the federal rules is foreclosed. Thus, the Court does not

17

address whether the Sixth Circuit would permit a private party to intervene as a defendant under NEPA.

Overall, the Movants do not have a legal, protectable interest premised on contractual or real property rights. Nor are their economic or citizenry-protection interests directly jeopardized by the current action. As the Movants are unable to demonstrate this factor under Rule 24(a)(2), their intervention as a matter of right is inappropriate. *See Michigan*, 424 F.3d at 443 (with any factor lacking, a party may not intervene under Rule 24(a)(2))

### II. Permissive Intervention

The Movants declare that they are also entitled to permissive intervention. Rule 24(b) describes that a party is permitted to intervene when, on a timely motion, the party "is given a conditional right to intervene by a federal statute" or "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). In choosing to grant or deny permissive intervention, not only is the trial court vested with broad discretion, *Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974), but it must also seek to guard against any "undue[] delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(3).

In rejecting this contention by Movants, the Court relies upon a number of factors, not the least of which is that they do not have a recognized interest in the subject matter of the litigation. *See supra* Section I. The trio also lacks a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Indeed, as they lack their own, unique legal interest in the litigation, Movants can only offer general support of the FHWA and the procedure it followed in rejecting the alternatives to the Project. Just as the overall desire to have the Project completed is not a legally protectable interest upon which the Movants can rely,

nor is it a claim or defense that would lead this Court to grant permissive intervention.

Even if the Movants did share a defense or claim with this main action, the Court is not inclined to grant them permission to intervene. This action will confront exclusively whether the FHWA complied with NEPA and how it received, analyzed, and interpreted a variety of data when it ultimately decided upon the Project's specifics. It promises to be a fact-intensive, expert-driven matter that closely scrutinizes FHWA's rationale for choosing the Orange-6 Alternative in lieu of the others possible construction scenarios set forth in the FEIS. To combine Movant's arguments about the future of the Transpark, their respective liabilities for the outstanding bond issuance, and each's opinion on the traffic problems surrounding the Corridor would only serve to complicate an already difficult matter. For these reasons, the Court exercises its broad discretion and chooses to deny Movants' request to permissibly intervene.

### III. Amicus Curiae

While the above-described decisions are an accurate interpretation of intervention under Rule 24, the Court recognizes that whether the Project is completed or not represents an issue of importance to the region and to the Movants. In the past, district courts have been given the discretion to allow the participation of proposed intervenors in a proceeding as amicus curiae, permitting these parties to detail their position to the Court through the submission of legal briefs. *See Miller*, 103 F.3d at 1244; *Bradley*, 828 F.2d at 1194-95. This Court will thus grant Movants' motion for leave to file a brief as amicus curiae. This will allow them to provide the Court with their targeted, local arguments in favor of the Project as well as address whatever issues they may feel are implicated by the current litigation.

### CONCLUSION

FOR THE FOREGOING REASONS:

(1) The Movants' motion to intervene as Defendants (DN 7) is DENIED. An appropriate order shall issue.[10]

(2) The Movants' motion for leave to file a brief as amicus curiae (DN 24) is GRANTED. The clerk of court is directed to make the appropriate notation on the docket by adding the Fiscal Court of Warren County, the City of Bowling Green, and the Inter-Modal Transportation Authority as amicus curiae. Jointly, they may file a brief not to exceed 40 pages on or before June 3, 2011, and they will be allowed to file a reply brief consisting of 30 pages supporting Defendants' cross-motion for summary judgment on or before July 22, 2011.

---

[10] An order denying a motion to intervene is a final and appealable order. *See e.g.*, *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d. Cir. 2010); *United States v. Albert Inv. Co.*, 585 F.3d 1386, 1389 (10th Cir. 2009); *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 833 (8th Cir. 2009).